**LeClairRyan**
*A Virginia Professional Corporation*
One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
(973) 491-3600
Attorneys for Cowan Gunteski & Co., P.A.,
Donald Cowan and William Meyler,
improperly plead as William Myler

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TAURIGA SCIENCES, INC., A Florida Corporation, | Civil Action No. 3:16-cv-06285 (PGS)(DEA) |
| Plaintiff, | |
| v. | Motion Return Date: May 23, 2017 1:30 p.m. |
| COWAN, GUNTESKI & CO., P.A., A Foreign Corporation; DONALD COWAN, an Individual; and WILLIAM MYLER, an Individual, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S "MOTION TO SET MATTER FOR TRIAL"**

**TABLE OF CONTENTS**

Table of Authorities............................................ii

Preliminary Statement............................................1

Summary of Argument..............................................1

Nature of the Action and Prior Proceedings.......................2

      (i)   Plaintiff's Initial Disclosure....................4

      (ii)  Tauriga's Rule 34 Responses.......................7

      (iii) Plaintiff's Improper Assertions of Privilege......9

Conclusion......................................................10

**TABLE OF AUTHORITIES**

## Cases

Basic v. Leinvson, 485 U.S. 224, 108 S.Ct. 978 (1988).......... 8

Companion Property & Casualty Ins. Co. v. U.S. Bank
   National Assoc., 2016 WL 3452734 (D.S.C. Aug. 7, 2016)....... 6

Frontline Medical Associates, Inc. v. Coventry Health Care,
   263 F.R.D. 567 (C.D. Ca. 2009)............................... 6

Olaya v. Wal-Mart Stores, Inc., 2012 WL 3262875
   (D. NV. Aug. 7, 2012)........................................ 6

## Statutes

28 U.S.C. §1391............................................... 3

Rule 26(a)(1)(E).............................................. 7

Rule 26(f).................................................... 4

**Preliminary Statement**

This memorandum of law, together with the accompanying certification of Ronald S. Herzog (the "Herzog Cert."), are respectfully submitted by Defendants Cowan, Gunteski & Co. P.A. ("CGC"), Donald Cowan and William Meyler, incorrectly sued herein as William Myler (collectively, "Defendants") in opposition to Plaintiff Tauriga Sciences, Inc.'s ("Tauriga" or "Plaintiff") April 19, 2017 "motion to set matter for trial."[1]

**Summary of Argument**

As demonstrated below, since this matter was transferred to this Court Plaintiff has consistently engaged in conduct which has delayed and unreasonably protracted this dispute. Plaintiff has unfortunately payed lip service to its discovery obligations and refused to provide many of the documents which Defendants need and are undoubtedly entitled to. Plaintiff now has the temerity to ask the Court to reward its conduct by prematurely seeking the setting of a trial date, when fact discovery is far from complete and, accordingly, expert discovery has not even commenced. There is simply no factual or legal basis to award Plaintiff the relief requested, and no authority is cited under

---

[1] The motion consists of a single document filed under Docket No. 69 entitled "Motion to Set Matter for Trial" (the "Motion"). In violation of L. Civ. R. 7.1 Tauriga has, once again, failed to serve a notice of motion, affidavit, affirmation or certification along with its motion.

which such relief should be granted.  Plaintiff's motion should, therefore, be denied.

### Nature of the Action and Prior Proceedings

In its reply on its recent motion for permission to file a substantially out of time jury demand due to "inadvertence" Tauriga acknowledges that this matter was in an "early stage." (See Docket No. 70 at page 3).  Almost simultaneously with that submission, Tauriga filed the instant motion seeking, without any citation to the Federal Rules of Civil Procedure, to set this matter for trial on the astonishing ground that since "[t]he pleadings in the matter have closed . . . the matter is ripe to be set for trial" (Motion, at page 2).[2]  Logic and common sense, as well as the Federal Rules of Civil Procedure, dictate that simply because an answer has been filed a matter is not thereby ready for trial, as this case amply demonstrates.

Tauriga's cursory recitation of the history of this matter is both incomplete and inaccurate.  In violation of the mandatory pre-suit mediation provision in Tauriga's engagement letter with CGC, suit was filed in November, 2015 in the United States District Court for the Southern District of Florida. The

---

[2] In their March 31, 2017 Motion to Allow Trial by Jury Tauriga noted that "the Court had not yet set this matter for trial."  Docket Entry 66, at pg. 5.  Less than three weeks later, before that motion had even been argued, Tauriga asks for a trial date.

litigation was commenced notwithstanding the fact that Tauriga's obligation to mediate had specifically been brought to counsel's attention in response to a pre-suit demand letter sent to CGC. Shortly after filing suit Tauriga moved to stay the Florida action pending the outcome of the mediation. See Herzog Cert., ¶ 3, Exhibit A, Florida District Court Docket for Matter 15-cv-62334-RLR, Docket entry number 14). The Florida litigation was stayed until May, 2016, when Tauriga moved to lift the stay following the first mediation session. (Id., Docket entries 20-22).

On June 13, 2016, Defendants, all residents of New Jersey, moved under Rule 12(b)(2) to dismiss for lack of personal jurisdiction and to dismiss for improper venue under Rule 12(b)(3). Defendants alternatively moved for a transfer of venue to this Court. Although the complaint failed to allege any basis for venue in Florida under 28 U.S.C. §1391, and none was asserted in Tauriga's opposition to Defendants' motion, the case was not transferred to this court until October, 2016. Once Defendants were assured that participation in discovery could not be deemed a waiver of their objections to the lack of personal jurisdiction and improper venue in Florida, they sought the necessary discovery in this suit, in which an insolvent start-up company seeks in excess of $4 Million in damages, only to repeatedly be stymied in their efforts to obtain the

3

necessary documents from Tauriga to proceed with fact depositions.

**(i) Plaintiff's Initial Disclosure**

The Rule 26(f)conference was held on July 21, 2016, while the Defendants' motion to dismiss was <u>sub judice</u>. Tauriga's initial disclosure was due within 14 days of the conference; however, they were not served until more than 6 months later. Attached as Exhibit B to the Herzog Certification is a copy of plaintiff's Initial Disclosure which, although dated January 9, 2017, were not served until February 14, 2017, and then only after Tauriga had been directed to do so by Magistrate Judge Arpert.

In addition to their untimeliness, plaintiff's Initial Disclosures were, and remain, materially deficient. Rule 26(a)(1)(A)(ii) requires that the party provide a copy or description by category and location of all documents in the disclosing party's possession, custody or control that that party may use to support its claims or defenses (unless the document will be used solely for impeachment). Similarly, Rule 26(a)(1)(A)(iii) requires the production of a computation of each category of damages and all non-privileged documents and other evidentiary materials on which each component of damages is based. Tauriga's initial discovery, which Defendants were entitled to receive in August, 2016 to enable them to formulate

4

an effective discovery plan, is woefully inadequate. For example:

- Tauriga seeks an unspecified amount for the legal fees of Jeff Quick and Paul Siverberg, the latter being its lead attorney in this litigation. No documents supporting these alleged damages have been produced, with Tauriga instead taking the position that the documents on which this claim is based are privileged.

- Tauriga is seeking recovery of the legal fees paid to a "Quebec attorney" whom it has not only refused to identify, but has also failed to provide any documents concerning the services for which reimbursement is sought.

- Tauriga is seeking the fees incurred by "GBQ" for derivative liability calculations, but the only documents Tauriga has provided pertaining to these services are two invoices from GBQ which are lacking in detail.

- Tauriga is seeking approximately $130,000 for various unspecified work performed by three accountants, Ronnie Gluck, Frank Lamendola and Kevin Lacey. With the exception of one retainer letter, no documents concerning these accountants or their unidentified services for which reimbursement is sought has been provided.

Plaintiff's initial disclosure contains another major deficiency. Plaintiff has repeatedly stated in public filings made under the Securities Exchange Act and press releases that at trial it will seek damages in excess of $4 Million, including claims for the loss of business opportunities. However, Tauriga's initial disclosures (to the extent made) have been limited to "expenses that do not encompass expert calculations and are mainly out of pocket expenses." (See Exhibit B, at pg. 2) This self-directed, self-serving limitation violates well-settled law that timely initial disclosures cannot be avoided

5

based on a claim that information may be introduced through expert testimony. <u>Frontline Medical Associates, Inc. v. Coventry Health Care</u>, 263 F.R.D. 567 (C.D. Ca. 2009) (where the District Court held that a party is not relieved of its obligations to provide reasonably available information regarding the components of a claim for lost profits, consequential damages and the like because of the claimed need for "future expert analysis."); <u>see</u> <u>also</u> <u>Companion Property & Casualty Ins. Co. v. U.S. Bank National Assoc.</u>, 2016 WL 3452734 (D.S.C. Aug. 7, 2016); <u>Olaya v. Wal-Mart Stores, Inc.</u>, 2012 WL 3262875 (D. NV. Aug. 7, 2012).

Tauriga apparently has sufficient information for public disclosure or promotional purposes about the dollar value and components of all its damage claims, thus dispelling any question concerning whether this information is "reasonably available" for purposes of Rule 26(a)(1)(E). However, when it comes to its initial disclosure obligations Taurgia suddenly states that its claims "encompass expert calculations" and that significant component of these claims need not be disclosed as part of its Initial Disclosure. After several meet and confers addressing the deficiencies in plaintiff's Initial Disclosures they were presented to Magistrate Judge Arpert by letters dated February 24, 2017 and February 27, 2017. He has not yet ruled on these issues.

6

Tauriga is now quick to chastise Defendants for their alleged failure to proceed with discovery, stating that Defendants have ample time to "tailor any deposition questions asked of the Plaintiff to those that would be presented to a jury." Docket No. 70, Reply to Response to Motion to Allow Trial by Jury, at pg, 5. In doing so Tauriga ignores the primary purpose of Rule 26 automatic disclosure, to wit: to allow a party to determine how to proceed with subsequent discovery, including depositions. Having failed to comply with its mandatory initial disclosure requirements Tauriga should not be heard to complain about Defendants' inability to proceed with meaningful depositions until Plaintiff's initial disclosure has been made.

**(ii) Tauriga's Rule 34 Responses**

Tauriga's discovery deficiencies are not limited to its Initial Disclosure. Tauriga has also failed to provide many documents that its own production identifies, while maintaining unsupportable positions of privilege.

For example, between March and June of 2016 Tauriga announced that it was in discussions "with several potential acquisition targets," and that it was "currently in negotiations to repay, retire, and if necessary restructure" various obligations, including two obligations which are the subject of claims for liquidated damages. See Herzog Cert., ¶ 5, Exhibits

7

C-1 and C-2). No documents concerning these proposed acquisitions or restructuring negotiations have been produced, and they are the subject of applications to compel before Magistrate Judge Arpert.

It simply defies credulity for Tauriga to maintain that multiple merger discussions were sufficiently advanced to the point that the company, presumably advised by counsel, was required under the Supreme Court's decision in Basic v. Leinvson, 485 U.S. 224, 239, 108 S.Ct. 978 (1988) to disclose them,[3] yet not a single document, including any non-disclosure agreements, concerning any aspect of these discussions exists. It also strains credibility to accept that negotiations concerning Tauriga's obligations failed to generate any documents.

Another glaring example of the deficiency in Tauriga's production was revealed by its disclosure of the November 11, 2014 Amendment to Consulting/Referred Agreement Tauriga entered into with Alternative Strategy Partners of Singapore. Although

---

[3] In assessing whether merger discussions had advanced to the point that they were material for disclosure purposes under the Federal Securities Laws, the Supreme Court identified board resolutions, instructions to investment bankers and actual negotiations between principals or their intermediaries as indicia of interest in the proposed transaction to be considered for materiality purposes. Id. While the existence of sufficient indicia to warrant disclosure of Tauriga's several negotiations admittedly were present, as previously noted not a single document concerning any potential merger has been produced by Tauriga.

a copy of the amendment was produced (Herzog Certification, ¶ 5, Exhibit D), Tauriga never produced:

- Its original agreement with Alternative Strategy Partners;

- The "current equity private placement of up to USD 2,500,000" identified in the November 11th amendment; or

- Any documents reflecting any actual or potential funding services identified by ARP or any communications with any potential investor introduced by Alternative Strategy Partners.

Tauriga, an insolvent start-up company with virtually no historic revenue and an accumulated operating deficit of approximately $50 Million (Herzog Cert., ¶ 7, Exhibit E), has alleged that as a result of its July, 2015 delisting from the OTCQB due to Defendants' negligence, it has "endured difficulties" in securing working capital, "damages to its ongoing business, and "potential" contractual defaults. In view of these allegations Defendants have the absolute right to document discovery of Tauriga's efforts in securing working capital prior to its delisting to properly prepare for depositions.

**(iii) <u>Plaintiff's Improper Assertions of Privilege</u>**

Plaintiff's assertion of privilege has also prevented discovery from proceeding in a proper fashion. Plaintiff's privilege log (Herzog Cert. ¶ 8, Ex. F) reflects that the following documents have been withheld:

9

- Invoices from attorneys Quick & Silverberg (3104-3129; 3130-3135), despite the fact that Tauriga is seeking the recovery of their fees in unspecified amounts.  See Exhibit B.

- Unspecified test results from Pilus Energy provided to unidentified recipients, which have been withheld on the ground that the results constitute a "trade secret" (3068-3072), despite the fact that Tauriga has repeatedly refused to enter into any confidentiality stipulation.

- An email from Tauriga's CEO, Seth Shaw, concerning a "wire", despite the fact the description of this document reveals that it does not concern legal advice (3006-3017).

- An email string from Messrs. Quick and Shaw, despite the fact that the recipients included Michael Pollak [sic] and Sanjay Singla, members of KBL, Inc., Tauriga's outside independent auditor, thereby waiving any potential claim of privilege (3050-3055), and

- Numerous emails concerning an unspecified patent application (3077-3097), thereby preventing Defendants' determination of whether this patent constitutes a part of Tauriga's previously announced damage claim for patents it was forced to abandon due to Defendants' alleged negligence.

The numerous deficiencies in Tauriga's Rule 34 production and assertions of privilege are currently <u>sub judice</u> before Magistrate Judge Arpert.

## Conclusion

Assuming Plaintiff's motion to set matter for trial is even procedurally proper, it should be denied.  If Tauriga was legitimately interested in a prompt resolution of this dispute as it claims, it would initially have complied with its mediation obligation, filed suit in the proper court in the absence of a mediated resolution, and then complied with its

10

written discovery obligations.  Tauriga has done none of the foregoing, choosing instead to avoid producing the required disclosure and propounding clearly improper discovery.[4]

For the foregoing reasons, it is respectfully submitted that Plaintiff's motion should be denied, and the Court should award Defendants such other and further relief as it deems just and proper.

Dated:    May 8, 2017

                                        Respectfully submitted,

**LECLAIRRYAN**

By: /s/ Karol Corbin Walker
      Karol Corbin Walker

One Riverfront Plaza
1037 Raymond Boulevard, 16th Floor
Newark, New Jersey 07102
Phone: (973) 491-3600

Attorneys for Defendants
Cowan, Gunteski Co., P.A.,
Donald Cowan and William Meyler

S&C#00232128(3246)

---

[4] On March 28, 2017 Plaintiff served its Third Request for Documents which prior to any judgment having been entered sought income tax returns and extensive financial information from the Defendants. (Herzog Cert., ¶ 9; Exhibit G). Plaintiff ignored Defendants' request to withdraw these clearly improper requests. Plaintiff has now also apparently sought documents from the PCAOB despite the fact that the Board's documents are privileged. See Docket No. 74.

11