UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Case No.: 3:16-CV-06285

**Tauriga Sciences, Inc.,**

    **Plaintiff,**

    vs.

**Cowan, Gunteski & Co., P.A.; Donald Cowan; and William Meyler,**

    **Defendants.**

<u>**EXPERT REBUTTAL REPORT OF GARY B. ROSEN**</u>
<u>**CPA, CFF, CFE, CVA, CGMA**</u>
<u>**October 6, 2017**</u>

**EXPERT REBUTTAL REPORT OF GARY B. ROSEN, CPA, CFF, CFE, CVA, CGMA**

**TABLE OF CONTENTS**

|     |                                                          | Page |
|-----|----------------------------------------------------------|------|
| I.  | INTRODUCTION                                             | 1    |
| II. | LIMITED SCOPE                                            | 2    |
| III.| QUALIFICATIONS                                           |      |
|     | Experience                                               | 2    |
|     | Basis of Opinions                                        | 3    |
| IV. | SUMMARY OF OPINIONS                                      | 3    |
| V.  | BACKGROUND                                               | 4    |
| VI. | ANALYSIS                                                 |      |
|     | Documents Needed for Reaudit of March 31, 2014           | 7    |
|     | Delay in Filings with the SEC                            | 10   |
| VII.| CONCLUSION                                               | 12   |
| VIII.| ASSUMPTIONS AND LIMITING CONDITIONS                     | 12   |
| IX. | CERTIFICATIONS                                           | 13   |

**Curriculum Vitae** — **Appendix A**
**Documents Read and Relied Upon** — **Appendix B**
**Email from Ghalia Lahlou to Frank Lamendola dated August 10, 2015** — **Appendix C**
**Email from Ronald Gluck to Cowan Gunteski dated November 11, 2013** — **Appendix D**
**Email from Ronald Gluck to Cowan Gunteski dated February 10, 2014** — **Appendix E**
**Email from Frank Lamendola to Cowan Gunteski dated July 14, 2014** — **Appendix F**
**Email from Michael Pollack to Spire Group dated July 13, 2015** — **Appendix G**
**Email from Michael Pollack to William Meyler dated March 2, 2016** — **Appendix H**

# EXPERT REBUTTAL REPORT OF GARY B. ROSEN, CPA, CFF, CFE, CVA, CGMA

## I. INTRODUCTION

Marcum LLP ("Marcum") has been retained by Steinberg & Cavaliere, LLP ("Counsel") as a rebuttal expert in this action alleging accounting malpractice, unjust enrichment and negligent misrepresentation. Gary B. Rosen, CPA, CFF, CFE, CVA, CGMA ("Rosen" or "I") serves as the Partner on this engagement, and has been asked by Counsel to opine on certain aspects of this matter.

Tauriga Sciences, Inc. ("Tauriga" or "Plaintiff" or "Company") filed the above-mentioned lawsuit against Cowan, Gunteski & Co., P.A. ("Cowan Gunteski"), Donald Cowan ("Cowan"), and William Meyler ("Meyler") (together the "Defendants") in November 2015 in the United States District Court for the Southern District of Florida. The action was subsequently transferred to the United States District Court for the District of New Jersey. The complaint alleges that Cowan Gunteski committed accounting malpractice and received unjust enrichment, and that Cowan and Meyler made negligent misrepresentations by communicating to Tauriga that they could perform work on the audit of Tauriga's fiscal year ended March 31, 2014 financial statements.[1] The complaint further alleges that Cowan Gunteski failed to timely disclose that it was under investigation by the Public Company Accounting Oversight Board (PCAOB), and that Meyler failed to timely disclose that he could not serve as lead auditor for the fiscal year ended March 31, 2014 audit.

Tauriga's first claim[2] is that Cowan Gunteski committed accounting malpractice by violating Section 10A(j)[3] of the Securities and Exchange Act of 1934 ("Exchange Act") which provides that a registered public accounting firm cannot provide audit services to an issuer if the lead audit partner has performed audit services in each of the five (5) previous years of the issuer.[4] Tauriga claims that Meyler served as the lead audit partner on the engagement either at his predecessor firm or at Cowan Gunteski and provided an audit opinion on Tauriga's financial statements for more than five (5) consecutive years and hence violated Section 10A(j) of the Exchange Act. In addition, Tauriga claims that Cowan Gunteski refused to return their original documents to them. Tauriga claims that this alleged refusal forms the basis for punitive damages against Cowan Gunteski[5] (as well as for 342 business days of "penalty" sums under a Convertible Debenture issued to one of its lenders), as this alleged refusal hampered the successor auditor KBL, LLP ("KBL") in completing a reaudit of Tauriga's financial statements for the fiscal year ended March 31, 2014 ("reaudit of the 2014 financial statements") and the resulting delay of subsequent filings until December 2016. More specifically, the complaint alleges that Cowan Gunteski refused to turn over to Tauriga "all of

---

[1] The fiscal year end of Tauriga is March 31.
[2] Paragraphs 26 through 31 of Tauriga Sciences, Inc.'s complaint against Cowan, Gunteski & Co., P.A., Donald Cowan, and William Myler [sic] dated November 4, 2015 (the "Complaint").
[3] Although the complaint refers to Section 10A of the Securities and Exchange Act of 1934, we refer to the more specific subsection 10A(j) as it is the specific subsection detailed in the PCAOB "Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions" in the Matter of Cowan, Gunteski & Co., P.A. and William Meyler, CPA dated July 23, 2015.
[4] Section 10A(j) of the Securities Exchange Act of 1934.
[5] Complaint paragraph 23.

its [Tauriga's] papers, receipts, analysis, records and books, which would have otherwise assisted Tauriga."[6]

KBL is a Certified Public Accounting and Business Advisory Services firm with a focus on emerging businesses.[7] KBL replaced Cowan Gunteski as Tauriga's external auditors in June 2015.[8]

Tauriga's second claim[9] is that Cowan Gunteski and Meyler received unjust enrichment as they were paid for auditing the fiscal year ended March 31, 2014 financial statements which later became unusable due to the aforementioned violation of Section 10A(j) of the Exchange Act.

Tauriga's third claim[10] is that Cowan and Meyler committed negligent misrepresentation by communicating to Tauriga that Meyler could serve as the lead audit partner for the audit of the fiscal year ended March 31, 2014 financial statements while they were allegedly aware of their violation of Section 10A(j) of the Exchange Act.

This report is based upon information currently known to me, and I reserve the right to rely upon additional information that becomes available to me after the date of this report and to supplement or amend my opinions accordingly.

## II.   LIMITED SCOPE

This rebuttal report is limited in scope to the following section of the Expert Report of Pamela M. O'Neill ("O'Neill") dated September 6, 2017: Cowan Gunteski "…added a delay in the remediation efforts [of Tauriga] by taking an unreasonable and significant amount of time to return the work-papers in connection with the retention of an alternative accounting firm,"[11] and to the extent O'Neill's report asserts that Tauriga was damaged as a result thereof.

## III.   QUALIFICATIONS

### A.   EXPERIENCE

I am a financial professional with approximately forty (40) years of experience in public accounting providing services in the areas of audit, fraud, consulting, forensic engagements, and valuations.

---

[6] Complaint paragraph 23.
[7] www.kbl.com/about.
[8] Executed engagement letter dated June 15, 2015 between Tauriga Sciences, Inc. and KBL, LLP (KBL 000829-833).
[9] Complaint paragraphs 32 through 36.
[10] Complaint paragraphs 37 through 51.
[11] Expert Report of O'Neill dated September 6, 2017, paragraph 10(a). This sentence should also be read in the context of paragraph 15(b)(iii) of O'Neill's Report, which describes the "default payment penalty" charged to Tauriga for the alleged 342 business days delay in the Company's compliance with Securities and Exchange Commission (SEC) filing requirements.

I am a Certified Public Accountant (CPA), through the American Institute of Certified Public Accountants (AICPA) licensed by the State of New Jersey, Certified in Financial Forensics (CFF) and a Charted Global Management Accountant (CGMA) both through the AICPA, Certified Valuation Analyst (CVA) through the National Association of Certified Valuators and Analysts (NACVA), and a Certified Fraud Examiner (CFE) through the Association of Certified Fraud Examiners (ACFE). I am current with all of my continuing professional education requirements for each of these certifications through the date of this report.

I am a Partner in the New York City office with Advisory Services of Marcum LLP, where I serve as the NYC Practice Leader. Prior to Marcum LLP, I was a Managing Director with Corporate Recovery Services of CBIZ Accounting, Tax, & Advisory of New York, LLC, and a Shareholder in the independent accounting firm of Mayer Hoffman McCann P.C. Prior to CBIZ, I was a Managing Director with Mercadien, P.C., where I co-chaired the litigation department. I have extensive experience in auditing, fraud investigations, forensic engagements, accounting standards, consulting engagements, and valuations. I have also taught accounting at Monmouth University at the graduate level in the Leon Hess Business School.

I received a B.A. in Accounting, with honors from the Newark College of Arts and Sciences-Rutgers University, now known as the Rutgers Business School, in 1980.

My Curriculum Vitae is attached as **Appendix A**, which describes my background, qualifications, articles, lectures, and a list of other cases in which I have provided testimony. Marcum is being paid a blended rate of $325 per hour for all hours spent on this engagement. Marcum's compensation is not contingent on the conclusions reached or the ultimate resolution of the case.

### B. BASIS OF OPINIONS

My opinions are based upon my professional training and experience as well as my reading and analysis of certain documents produced in the course of this litigation. **Appendix B** lists the documents I read and relied upon in forming my expert opinion.

My report is qualified by the fact that in conducting my work, I have made certain assumptions as to legal and factual matters, as disclosed to me by Counsel. These assumptions are as follows:

a) Copies of documents provided to me are complete and conform to the original documents and there have been no subsequent amendments, either orally or in writing;

b) All information provided to me by Counsel, whether in paper document, electronic document, or oral statement, is true and correct.

## IV. SUMMARY OF OPINIONS

At the request of Counsel, I analyzed and evaluated accounting and auditing standards from the PCAOB, legal pleadings, deposition transcripts, and documents produced in this litigation by Tauriga, Cowan

3

Gunteski, Spire Group ("Spire")[12], and KBL. These documents include but are not limited to communications between Cowan Gunteski and Tauriga during the time that Cowan Gunteski was engaged as their auditors as well as after they were replaced with KBL. Based on my analysis of the documents provided I concluded the following to a reasonable degree of certainty:

1. It was Tauriga's, not Cowan Gunteski's, responsibility to maintain their own financial records.[13] Additionally, to the extent that Tauriga did not satisfy its obligation to maintain copies of its own records, copies of those records could have been obtained from other parties to the agreements. Parties who acted as outside consultants performing the financial oversight function for Tauriga had copies of these documents, or the financial information such documents contained, including the information maintained in Tauriga's QuickBooks. These parties included, but are not limited to, Gluck and Spire. Furthermore, based upon PCAOB standards, even in the absence of Tauriga having maintained these records or Tauriga's inability to obtain copies of such records it claimed not to possess, there were alternative procedures that KBL could have applied to obtain sufficient evidentiary matter to be satisfied as to the validity of the opening balances for the fiscal year ended March 31, 2014.[14] This would have enabled KBL to perform the reaudit of the 2014 financial statements of Tauriga without access to the documents in Cowan Gunteski's possession.

2. Based on my analysis of the 10-Q filings for Q1 ended June 30, 2015 and Q2 ended September 30, 2015, and the Form 10-K containing the reaudit of the 2014 financial statements and the audit for fiscal year ended March 31, 2015, I conclude that these filings should have been completed and filed with the SEC by December 31, 2015. This conclusion is based on the facts that the filings would have been prepared several months to a year after the reporting periods had ended, a majority of the filings' presentation was repetitive and could have been prepared concurrently, and that there was minimal operational activity in Tauriga during the periods covered by the 10-Q filings.

## V.   **BACKGROUND**[15]

Tauriga is a publicly traded company allegedly in the biotechnology industry authorized to do business in Florida. As a publicly traded company, it must use the services of a registered public accounting firm to issue an opinion on its annual financial statements.

On June 15, 2015, Cowan Gunteski was terminated as Tauriga's independent registered public accounting firm and replaced by KBL.[16] Per its engagement letter dated June 15, 2015, KBL was engaged to audit the fiscal years ended March 31, 2015 ("2015 financial statements") and March 31, 2014 financial statements of Tauriga and review the quarterly reports for the periods ended June 30 (Q1), September 30 (Q2), and

---

[12] Spire replaced Ronald Gluck ("Gluck") as the Company's accountant – see Seth Shaw deposition page 152.
[13] PCAOB AS 1001.03, *Responsibilities and Functions of the Independent Auditor*; and page 5 of the executed engagement Letter between Cowan Gunteski and Tauriga dated June 10, 2014.
[14] PCAOB AS 2610.12, *Initial Audits – Communications Between Predecessor and Successor Auditors.*
[15] This section represents a factual framework for this matter based on documentation considered and conversations with relevant parties and should not be interpreted to contain any opinion on the part of Marcum relating to liability, causation, or damages.
[16] Form 8-K filed by Tauriga Sciences, Inc. on June 19, 2015 for the period ending June 15, 2015.

December 31, 2015 (Q3) ("2016 fiscal year quarterly reports").[17] The fees quoted by KBL and agreed to by Tauriga were as follows:

| Fees Quoted per KBL Engagement Letter dated June 15, 2015 | |
|---|---|
| 2014 Fiscal Year Audit | $ 20,000 |
| 2015 Fiscal Year Audit | 30,000 |
| Review of quarter ended June 30, 2015 | 7,000 |
| Review of quarter ended September 30, 2015 | 7,000 |
| Review of quarter ended December 31, 2015 | 7,000 |
| **Total** | **$ 71,000** |

[18]

On June 30, 2015, Tauriga filed a notice of late filing for Form 10-K for the 2015 financial statements.[19]

On July 23, 2015, the PCAOB issued the "Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions in the Matter of Cowan, Gunteski & Co., P.A. and William Meyler, CPA."[20] This order censured Cowan Gunteski and Meyler for violations of Section 10A(j) and Rule 10A-2 of the Exchange Act with respect to Tauriga (and another company), as well as PCAOB rules and standards.

On August 4, 2015, Tauriga filed Form 8-K documenting its removal from the OTCQB exchange and further detailing that the Form 10-K filed on July 15, 2014 should not be relied upon due to Cowan Gunteski's lack of independence.[21]

According to the deposition testimony of Michael Pollack ("Pollack"), Tauriga's engagement partner at KBL, KBL began requesting certain workpapers from Cowan Gunteski in or about June of 2015.[22] By August of 2015, Tauriga had asked Spire (Tauriga's accounting firm beginning in 2014) to obtain the fiscal year ended March 31, 2014 workpapers from Cowan Gunteski.[23]

On December 24, 2015, Cowan Gunteski sent a letter to KBL informing them that Tauriga had authorized Cowan Gunteski to give KBL access to Cowan Gunteski's workpapers associated with the audit of Tauriga's financial statements for the fiscal years ended March 31, 2013 and 2014. Additionally, this letter requested that KBL sign and return the letter to Cowan Gunteski agreeing to the terms and conditions of KBL's use of the workpapers provided.[24] KBL did not sign and return this letter until February 16, 2016.[25]

---

[17] Executed engagement letter dated June 15, 2015 between Tauriga Sciences, Inc. and KBL, LLP (KBL 000829-833).
[18] KBL executed engagement letter dated June 15, 2015.
[19] Form NT 10-K filed on June 30, 2015 for the period ended March 31, 2015.
[20] PCAOB "Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions" in the Matter of Cowan, Gunteski & Co., P.A. and William Meyler, CPA dated July 23, 2015.
[21] Form 8-K filed by Tauriga Sciences, Inc. on August 4, 2015 for the period ending July 29, 2015.
[22] Michael Pollack's deposition page 62. Also see email from Michael Pollack to Frank Lamendola of Spire Group (SPIRE 000586-590) at Appendix G.
[23] Email from Ghalia Lahlou of Tauriga Sciences, Inc. to Frank Lamendola of Spire Group dated August 10, 2015 (SPIRE000841) at Appendix C.
[24] Exhibit 15 of the deposition of Meyler.
[25] Exhibit 15 of the deposition of Meyler.

On March 8, 2016, KBL and Tauriga executed a new engagement letter,[26] which detailed that KBL would provide the following services: the reaudit of the 2014 financial statements, the audit of the 2015 financial statements, the audit of the financial statements for the fiscal year ended March 31, 2016 ("2016 financial statements"), interim review engagements for the quarterly periods ending June 30 (Q1), September 30 (Q2), and December 31, 2014 (Q3) ("2015 fiscal year end quarterly reports"), and the review of the 2016 fiscal year end quarterly reports. KBL's cost structure for the services to be provided in this engagement letter and agreed to by Tauriga, is as follows:

| Fees Quoted per KBL Engagement Letter dated March 8, 2016 | |
| --- | --- |
| 2014 Fiscal Year Re-audit | $ 25,000 |
| 2015 Fiscal Year Audit | 40,000 |
| Review of quarters ended June 30, 2015 and 2014 | 10,000 |
| Review of quarters ended September 30, 2015 and 2014 | 10,000 |
| Review of quarters ended December 31, 2015 and 2014 | 10,000 |
| 2016 Fiscal Year Audit | 25,000 |
| **Total (Prior to Discount)** | **$ 120,000** |

[27]

In March of 2016, Cowan Gunteski provided a copy of portions of its audit workpapers for the fiscal years ended March 31, 2013 and 2014 to KBL.[28]

According to the 10-Ks and 10-Qs documented by EDGAR, Tauriga made the following filings:

| Report | Filed Date |
| --- | --- |
| 10-K March 31, 2015 and 2014 | 5/20/2016 |
| 10-Q June 30, 2015 | 6/29/2016 |
| 10-Q September 30, 2015 | 7/12/2016 |
| 10-Q December 31, 2015 | 8/9/2016 |
| 10-K March 31, 2016 | 10/14/2016 |
| 10-Q June 30, 2016 | 11/9/2016 |
| 10-Q September 30, 2016 | 12/5/2016 |

[29]

---

[26] Executed engagement letter dated March 8, 2016 between Tauriga Sciences, Inc. and KBL, LLP (PLA002091-20197).
[27] Executed engagement letter dated March 8, 2016 between Tauriga Sciences, Inc. and KBL, LLP (PLA002091-20197).
[28] Meyler's deposition pages 180-181. See also email exchange between Michael Pollack and William Meyler on March 2, 2016 at Appendix H.
[29] http://pro.edgar-online.com.

6

## VI.   ANALYSIS

### A.   DOCUMENTS NEEDED FOR REAUDIT OF MARCH 31, 2014

Tauriga claims that Cowan Gunteski refused to return to Tauriga "all of its [Tauriga] papers, receipts, analysis, records and books, which would have otherwise assisted Tauriga."[30] Per the deposition of Pollack, KBL claims it needed these documents to reaudit the 2014 financial statements since, according to Tauriga, portions of its original documentation was provided to Cowan Gunteski.[31] To reaudit the 2014 financial statements, KBL needed to gather sufficient evidential matter to be satisfied with the validity of the opening balances of fiscal year ended March 31, 2014,[32] which were the same as the ending balances as of March 31, 2013.

*The Engagement Letters and Related Standards*

Cowan Gunteski did not have any responsibility to maintain original documentation for Tauriga. PCAOB standards provide that financial statements are management's responsibility and that the entity's transactions are within the direct control of management.[33] In the executed engagement letters between Cowan Gunteski and Tauriga dated June 7, 2013, June 10, 2014, and July 16, 2014, Tauriga expressly agreed that management was responsible for the establishment and maintenance of adequate records.[34] Tauriga also agreed not to expect Cowan Gunteski to maintain copies of its records in Cowan Gunteski's possession.[35]

*The Possession of Original Documentation and Related Standards*

The documents Cowan Gunteski was provided in order to perform the audit for the fiscal year ended March 31, 2014 were received from Tauriga or its accountants,[36] since an auditor cannot audit its own work.[37]

During the relevant period, Gluck[38] and then Spire[39] performed accounting services for Tauriga which included the preparation of workpapers, schedules, evidential matter, and other supporting documentation in addition to the preparation of Tauriga's financial statements on which the outside auditors would ultimately issue their opinion.

Spire's first engagement letter dated March 18, 2014 with Tauriga identified the preparation of consolidated financial statements for the quarterly periods ended December 31, 2013 (Q3) and December 31, 2012 (Q3)

---

[30] Complaint paragraph 23.
[31] Pollack's deposition pages 63-64.
[32] Pollack's deposition page 68.
[33] PCAOB AS 1001.03, *Responsibilities and Functions of the Independent Auditor*.
[34] Cowan Gunteski executed engagement letters dated June 7, 2013, June 10, 2014, and July 16, 2014.
[35] Cowan Gunteski executed engagement letters dated June 7, 2013, June 10, 2014, and July 16, 2014.
[36] Meyler's deposition pages 178-179.
[37] PCAOB Auditing and Related Professional Practice Standards – Rule 3525(b).
[38] Deposition of Seth Shaw page 142.
[39] Deposition of Seth Shaw page 152.

7

and the fiscal years ended March 31, 2013 and 2012 to be included in Form S-1.[40] Spire's second engagement letter dated June 11, 2014 related to preparing consolidated financial statements for the fiscal year ended March 31, 2014 to be included in Form 10-K.[41] Spire's third engagement letter dated July 21, 2014 related to preparing consolidated financial statements for the fiscal year ended March 31, 2015 and quarterly periods ended June 30, 2014 (Q1), September 30, 2014 (Q2), and December 31, 2014 (Q3) to be included in Form 10-K and 10-Q as applicable.[42] Frank Lamendola, CPA, ("Lamendola") was the primary contact at Spire for Tauriga.[43] Lamendola's specialty is public companies and his practice areas include SEC, small business, and financial and tax consulting.[44]

Numerous emails between Cowan Gunteski and Gluck and Spire document that Gluck and Spire were both in possession of records and documents that contained Tauriga's financial information for quarterly periods and the fiscal year ended March 31, 2014 and a copy of Tauriga's QuickBooks files.

In an email dated November 11, 2013, Gluck sent Tauriga's trial balance for the quarter ended September 30, 2013 (Q2 for fiscal year ended March 31, 2014) and Tauriga's QuickBooks files to Cowan Gunteski team members.[45] An email from February of 2014 reflects that Gluck also sent Tauriga's trial balance for the quarter ended December 31, 2013 (Q3 for fiscal year ended March 31, 2014) and Tauriga's QuickBooks files to Cowan Gunteski team members.[46] Although Spire was not engaged until March 2014, since QuickBooks files include cumulative records, Spire had access to all the records including the general ledger, concerning Tauriga's quarterly periods and for the fiscal year ended March 31, 2014. Furthermore, Tauriga's QuickBooks files would have provided Spire with access to all of Tauriga's financial records prior to fiscal year March 31, 2014 that were recorded in such QuickBooks files, including but not limited to fiscal year ended March 31, 2013. These emails indicate that Gluck, who was tasked with maintaining the integrity of the financial records of Tauriga, had the necessary documentation to enable Cowan Gunteski to opine on the financial statements for the fiscal year ended March 31, 2014.

In an email dated July 14, 2014, Lamendola sent Cowan Gunteski Tauriga's trial balance for the fiscal year ended March 31, 2014.[47] In the weeks around this date, Lamendola sent Cowan Gunteski other documentation related to the audit of the fiscal year ended March 31, 2014, demonstrating that Spire had in its possession the necessary documents needed for an audit to be performed.

My opinion that KBL did not need access to Cowan Gunteski's fiscal year ended March 31, 2014 audit workpapers in order to perform the reaudit of the 2014 financial statements of Tauriga is confirmed by my evaluation of a copy of the audit workpapers that Cowan Gunteski provided to KBL in March 2016. These audit workpapers did not contain any "original" Tauriga records. On the contrary, they consisted of photocopies of selected Tauriga records and records documenting Cowan Gunteski's audit procedures,

---

[40] Spire executed engagement letter dated March 18, 2014 (SPIRE000024-28).
[41] Spire executed engagement letter dated June 11, 2014 (SPIRE000019-23).
[42] Spire executed engagement letter dated July 21, 2014 (SPIRE000014-18).
[43] Deposition of Seth Shaw page 152.
[44] http://www.spirecpa.com/about-us/leadership/frank-lamendola.
[45] Email from Ronald Gluck to Cowan Gunteski dated November 11, 2013 at Appendix D.
[46] Email from Ronald Gluck to Cowan Gunteski dated February 10, 2014 at Appendix E.
[47] Email from Frank Lamendola to Cowan Gunteski dated July 14, 2014 at Appendix F.

which are the property of Cowan Gunteski.[48] Therefore, these audit workpapers were not necessary in order for KBL to perform a reaudit of the 2014 financial statements.

Based on the aforementioned facts, any documentation related to Tauriga that was provided, or made available to Cowan Gunteski for preparing the audit report for the fiscal year ended March 31, 2014, was in the possession of either Tauriga, Gluck, or Spire. Therefore, any information that KBL needed to perform the reaudit of the 2014 financial statements was available to them from Tauriga, Gluck, or Spire, or if necessary, from Tauriga's counterparties to any relevant agreements or transactions.

*Alternative Procedures and Related Standards*

The PCAOB provides that "the audit evidence used in analyzing the impact of the opening balances on the current-year financial statements and consistency of accounting principles is a matter of professional judgment".[49] Even if KBL did not have access to all of the documents it claimed were needed to ascertain the opening balances as of April 1, 2013 to perform the reaudit of the 2014 financial statements, there were alternative procedures which KBL could have utilized to obtain such audit evidence. These alternative procedures would include, but are not limited to, the most recent audited financial statements and audit procedures performed on the current period's transactions that would have provided sufficient evidence as to the validity of the opening balances.[50]

These alternative audit procedures could have easily been applied given that Tauriga's Balance Sheet as of March 31, 2013 included limited types of assets and liabilities.[51] Such assets and liabilities reported in the balance sheet for fiscal year ended March 31, 2013 could have been audited through alternative procedures including but not limited to subsequent cash receipts, subsequent cash disbursements and third party confirmations, none of which required access to Cowan Gunteski's audit workpapers.

For current assets and liabilities, audit evidence on opening balances can be obtained as part of the current period's audit procedures.[52] KBL had access to the audited financial statements because Tauriga's March 31, 2013 10-K was filed with the SEC. An example of a test that KBL could have performed on the current period's transactions in order to gather evidence of the opening balances on April 1, 2013 in order to perform the reaudit of the 2014 financial statements would be to test subsequent cash disbursements. This would provide evidence to support the Accounts Payable balance as of March 31, 2013. It was also possible to test subsequent cash receipts to validate the Other Receivable balance[53] as of March 31, 2013.[54] Tauriga's cash balance, its largest asset, could have been confirmed with Tauriga's bank. The notes payable, convertible notes, and accrued professional fees could have been confirmed with third parties to such agreements. The issued and outstanding shares and any changes in such shares could have been confirmed with the stock transfer agent and by utilizing other evidentiary matter.

---

[48] Cowan Gunteski executed engagement letter June 10, 2014, page 5.
[49] PCAOB AS 2610.12, *Initial Audits – Communications Between Predecessor and Successor Auditors.*
[50] PCAOB AS 2610.12, *Initial Audits – Communications Between Predecessor and Successor Auditors.*
[51] Tauriga's 10-K filed on July 12, 2013 for the fiscal year ended March 31, 2013.
[52] PCAOB AS 2610.12, *Initial Audits – Communications Between Predecessor and Successor Auditors.*
[53] The balance of the other receivable was $7,906 as of March 31, 2013 which could be considered immaterial based on what an auditor considers material in the audit.
[54] PCAOB AS 2610.12, *Initial Audits – Communications Between Predecessor and Successor Auditors.*

In conclusion, Tauriga and KBL could have begun and subsequently completed the reaudit of the 2014 financial statements without receiving any documents from Cowan Gunteski.

## B. DELAY IN FILINGS WITH THE SEC

As detailed in the previous section, to perform the reaudit of the 2014 financial statements, Tauriga and KBL did not need any documents from Cowan Gunteski for the fiscal year ended March 31, 2014.

The PCAOB censure of Cowan Gunteski and Meyler was filed on July 23, 2015 and was described in Tauriga's Form 8-K filed in August 2015.[55] Therefore, in or around August 2015, Tauriga should have engaged KBL or another registered public accounting firm to function as its external auditor and to perform the reaudit of the 2014 financial statements. Tauriga engaged KBL on March 11, 2016[56] to perform the reaudit of the 2014 financial statements, in addition to other services. This engagement letter was executed seven (7) months after Tauriga became aware of the need for a reaudit[57] of the 2014 financial statements.

Tauriga's engagement of KBL or any other registered public accounting firm engaged in or around August 2015, would have enabled them to file (i) the 10-K containing the reaudit of the 2014 financial statements and the audit of the 2015 financial statements, (ii) the 10-Q for the quarter ended June 30, 2015 (Q1) and (iii) the 10-Q for quarter ended September 30, 2015 (Q2) by December 31, 2015 because of the following:

*Form 10-K Containing Reudit of the 2014 and Audit of the 2015 Financial Statements*

- Form 10-K containing reaudit of the 2014 financial statements and audit of the 2015 financial statements would have been prepared between several months to over a year after the required reporting periods had ended and thus could have been worked on simultaneously.

- With the exception of three (3) items in Footnote 14 of the March 31, 2014 10-K which documents subsequent events, the financial statements for the fiscal year ended March 31, 2014 as reaudited by KBL were the same as the financial statements for the fiscal year ended March 31, 2014 audited by Cowan Gunteski. Per Pollack's deposition, there were no issues with the procedures of Cowan Gunteski.[58] Pollack continues that there were "restatements in our [KBL's] opinion, but that was not due to errors that they [Cowan Gunteski] made between April 1, 2014 and July of 2014 when they [Cowan Gunteski] issued their original opinion. It just happens to deal with subsequent events that came about, which indicated items had changed."[59]

---

[55] PCAOB "Order Instituting Disciplinary Proceedings, Making Findings, and Imposing Sanctions" in the Matter of Cowan, Gunteski & Co., P.A. and William Meyler, CPA dated July 23, 2015; and Form 8-K filed by Tauriga Sciences, Inc. on August 4, 2015 for the period ending July 29, 2015.
[56] Page 5 of the executed engagement letter dated March 8, 2016 between Tauriga Sciences, Inc. and KBL, LLP (PLA002091-20197).
[57] Based on Michael Pollack's deposition Pages 38 and 39, KBL advised Tauriga, after telephone conversations with the SEC and PCAOB which happened within a month of PCAOB censure, that a reaudit was needed.
[58] Pollack's deposition pages 81-82.
[59] Pollack's deposition pages 81-82.

*Form 10-Qs for Quarters Ended June 30, 2015 (Q1) and September 30, 2015 (Q2)*

- Form 10-Qs for the quarters ended June 30, 2015 (Q1) and September 30, 2015 (Q2) would have been prepared several months after the required reporting periods had ended. For example, the June 30, 2015 (Q1) 10-Q, if filed by December 31, 2015, would have been filed six (6) months after the end of the reporting period. Therefore, Tauriga and its agents would have had in their possession all the information needed to prepare the aforementioned reports and did not have to wait for the reporting period to end to gather the information needed to prepare such filings.

- The accounts and presentation of the 10-Qs does not vary substantially from quarter to quarter. Additionally, the subsequent events for the quarters would have been known within a few weeks of such reporting periods ending. Therefore, the 10-Qs for the quarters ended June 30, 2015 (Q1) and September 30, 2015 (Q2) could have been prepared concurrently.

- For the six (6) months between the fiscal year ended March 31, 2015 and the quarter ended September 30, 2015 (Q2),[60] the majority of the changes on the balance sheet were in cash, inventory, notes payable, accrued professional fees, liability for common stock to be issued and derivative liability. For the quarter ended June 30, 2015 (Q1), Tauriga's revenues were $40,746,[61] which were later eliminated[62] in the presentation of operational revenues for six (6) months ended September 30, 2015 (Q2).[63] For the quarter ended September 30, 2015 (Q2),[64] Tauriga did not have any operational revenues. Therefore, the operational activity of Tauriga in the above discussed periods was minimal, which would have accelerated the preparation of the 10-Qs for the quarters ending June 30, 2015 (Q1) and September 30, 2015 (Q2).[65]

In conclusion, Tauriga had four (4) to five (5) months between August 2015 and December 31, 2015 to file (i) the 10-K containing the reaudit of the 2014 financial statements and the audit of the 2015 financial statements, (ii) the 10-Q for the quarter ended June 30, 2015 (Q1) and (iii) the 10-Q for the quarter ended September 30, 2015 (Q2). Based upon the aforementioned analysis, a period of four (4) to five (5) months should have been sufficient for Tauriga to complete the all of the filings due for these periods by December 31, 2015. The filing of the above reports by December 31, 2015 would have made Tauriga current in its filings by the end of the calendar year 2015.

---

[60] Page F-1 of Tauriga's 10-Q for the period ended 9/30/2015 filed 7/12/2016.
[61] Page F-2 of Tauriga's 10-Q for the period ended 6/30/2015 filed 6/29/2016.
[62] These revenues were re-classed as revenues from discontinued operations and thus were eliminated from the presentation of continued operations.
[63] Page F-2 of Tauriga's 10-Q for the period ended 9/30/2015 filed 7/12/2016.
[64] Page F-2 of Tauriga's 10-Q for the period ended 9/30/2015 filed 7/12/2016.
[65] The increase of net loss from $(251,227) in the quarter ended June 30, 2015 (Q1) to a net loss of $ (1,882,336) for the quarter ended September 30, 2015 (Q2) was primarily due to changes in derivative liability. As documented in Tauriga's notes to financial statements in 10-Qs for Q1 ending in 6/30/2015 (Note 5) and Q2 ending in 9/30/2015 (Note 6) – "The Company accounts for the fair value of the conversion feature…as an embedded derivative contained in the Company's convertible debt and original issue discount notes payable. The Company is required to carry the embedded derivative on its balance sheet at fair value and account for any unrealized change in fair value as a component in its results for operations."

Therefore, Cowan Gunteski should not be responsible for any additional claimed costs, including liquidated damages under the Group 10 Holdings debenture, associated with Tauriga's failure to regain current filing status by December 31, 2015.

## VII.    CONCLUSION

It is my opinion based upon a reasonable degree of certainty that it was not the responsibility of Cowan Gunteski to maintain books and records of their audit clients nor maintain copies of such records in their possession. Additionally, any information that KBL needed to perform a reaudit of the 2014 financial statements should have been available from either Tauriga, Gluck, Spire or third parties. Furthermore, as documented in the PCAOB standards, KBL could have performed alternative procedures to obtain sufficient evidential matter to be satisfied with the validity of the opening balances as of April 1, 2013 for the fiscal year ended March 31, 2014.

Based on the fact that the late filings would have been prepared between several months to over an year after the reporting periods had ended, and given that the majority of the presentation of the 10-Qs was repetitive and could be prepared concurrently, and further given that the reaudit of the 2014 financial statements and the audit of the 2015 financial statements were included in the same 10-K and therefore could have been prepared concurrently, and even further given that there was minimal operational activity of Tauriga during this time period, I conclude to a reasonable degree of accounting certainty that these filings should have been filed by December 31, 2015. Thus, Tauriga could have become current in their filings nearly a year prior to December 6, 2016.

## VIII.   ASSUMPTIONS AND LIMITING CONDITIONS

My report is subject to the following assumptions and limiting conditions:

1. I have not audited or performed any other procedures on this information and consequently assume no liability for the completeness or accuracy of such information;

2. This report is based on the information received up to and including the date of this report. I reserve the right to amend, supplement, and/or modify my report as additional facts and/or data are established in this matter, given its continuing legal process;

3. I have not audited, reviewed, or compiled any historical financial information or federal income tax returns and, consequently, I express no form of assurance on them;

4. I have not audited or reviewed the information contained herein in accordance with standards promulgated by the American Institute of Certified Public Accountants and, accordingly, express no opinion regarding compliance with such standards, and

5. This report is solely for the use in the matter of litigation of Tauriga Sciences, Inc. v. Cowan Gunteski & Co., P.A.; Donald Cowan; and William Meyler.

## IX. <u>CERTIFICATIONS</u>

I certify, to the best of my knowledge and belief, that:

1. The statements of fact contained in this report are true and correct;

2. The report analyses, opinions, and conclusions are limited only to the reported assumptions and limiting conditions, and that they are my personal, unbiased, expert analyses, opinions and conclusions;

3. I have no present or prospective financial interest in the results of this case and I have no personal interest or bias with respect to the parties involved; and

4. My compensation is not contingent on an action or event resulting from the analyses, opinions or conclusions in, or the use of, this report.

Very truly yours,

Marcum LLP

_____
GARY B. ROSEN, CPA, CFF, CFE, CVA, CGMA
Partner-NYC Practice Leader Advisory Services